1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11   GEOFFREY UNDERDAHL aka PAUL
     ENSSLIN,[1]
12
                                   Petitioner,
13
     v.
14
     RICH HILL, Warden, et al.,
15
                                   Respondents.
16

Case No.:  20cv1292 AJB (BLM)

**ORDER:**

**(1) DENYING PETITION FOR A WRIT OF HABEAS CORPUS;**

**(2) DENYING PETITIONER'S REQUEST FOR APPOINTMENT OF COUNSEL; AND**

**(3) DENYING A CERTIFICATE OF APPEALABILITY**

20        Geoffrey Underdahl ("Petitioner") is a state prisoner proceeding pro se and in forma

21   pauperis with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (ECF

---

[1] The Court takes judicial notice that Petitioner was tried and conducted his first state appeal under the name Paul Ensslin and subsequently used the name Geoffrey Underdahl during later appellate and habeas proceedings, including the instant federal Petition.  (See ECF No. 1, see also e.g. ECF Nos. 7-14 at 1, 7-20 at 2, n. 1, Lodgment Nos. 4, 10); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.")  In view of Petitioner's use of this other name, the Court **DIRECTS** the Clerk's Office to amend the case caption to reflect Petitioner is also known as Paul Ensslin.

No. 1.)  Petitioner challenges his San Diego County Superior Court conviction for unlawful taking or driving a vehicle with the additional findings that he had a prior conviction for the same offense as well as strike and prison priors, and his resultant sentence of eleven years in prison.  (Id. at 1-2; see also Clerk's Transcript ["CT"] at 293 [ECF No. 7, Lodgment No. 1].)

Petitioner alleges in Claim One[2] his Sixth Amendment right to the effective assistance of trial and appellate counsel was violated due to trial counsel: (1) failing to file a motion to dismiss based on the violation of three motions in limine, (2) telling Petitioner he was not capable of taking the stand despite Petitioner's stated desire to testify, (3) failing to take action concerning Petitioner's medication and resultant panic attacks despite awareness of the issue, (4) failing to move for new jury when jurors entered the courtroom when Petitioner was in holding, (5) failing to object when the prosecutor erroneously stated Petitioner was wearing the same clothing in photos, (6) agreeing to jury instructions addressing an improper mix of cases, resulting in confusion, (7) failing to object to a "commingling of cases," and (8) failing to move to suppress an illegal identification of Petitioner, and appellate counsel's ineffectiveness in (9) misstating the facts in the appellate brief, which the state appellate court echoed.  (ECF No. 1 at 6, 8.)  In Claim Two, Petitioner alleges he is serving an "illegal and excessive sentence" due to errors committed by the sentencing court and he should be resentenced or his sentenced modified due to recent changes in state law concerning the consideration of strikes and prison priors.  (Id. at 7, 9.)

Respondent has filed an Answer and has lodged the relevant state court record.  (ECF Nos. 6-7.)  Respondent maintains habeas relief is unavailable because (1) the contentions

---

[2] In Grounds One and Three of the Petition, Petitioner alleges violations of his Sixth Amendment right to the effective assistance of counsel and in Grounds Two and Four, Petitioner alleges errors and issues concerning his sentence. (ECF No. 1 at 6-9.) Accordingly, the Court will consider Petitioner's listed grounds for relief in Grounds One and Three together as Claim One of the Petition and his listed grounds for relief in Grounds Two and Four together as Claim Two of the Petition.

raised in Claim One are not exhausted but habeas relief is unavailable regardless of the failure to exhaust because the claims are meritless and (2) Claim Two fails to state a cognizable federal claim and even to the extent it states a federal claim it lacks merit.  (ECF No. 6 at 2.)  Petitioner has filed a Traverse, in which he maintains his claims of ineffective assistance of counsel (Claim One) are exhausted, his claims are not meritless, and requests appointment of counsel.  (ECF No. 11 at 1-3.)

For the reasons discussed, the Court **DENIES** the Petition for a Writ of Habeas Corpus, **DENIES** Petitioner's request for appointment of counsel and **DENIES** a Certificate of Appealability.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the state appellate court opinion affirming the judgment in People v. Ensslin, D074144 (Cal. Ct. App. Dec. 19, 2018).  (See ECF No. 7-14.)  The state court factual findings are presumptively reasonable and entitled to deference in these proceedings.  See Sumner v. Mata, 449 U.S. 539, 545-47 (1981).

> When the sales manager of a car dealership was getting into his car at about 5:15 p.m. one day, he saw a new car from his dealership approach with no salesperson inside and no temporary registration on the windshield.  When the driver saw the sales manager, the driver turned the car around and sped away.  The sales manager pursued the car and confirmed with the dealership that it had not been sold.  The car eventually stopped in a parking lot of a retail store.  When a police officer arrived at the parking lot in response to a report the car had been stolen, the officer found Ensslin sitting in the driver's seat, with two key fobs for the car attached to a clip on his belt loop, and arrested him.  The sales manager returned to the dealership and reviewed surveillance video from approximately 2:00 a.m. that day, which showed a man walking through the lot trying to open car doors and eventually driving off in the car in which Ensslin was later arrested.

(ECF No. 7-14 at 2-3.)[3]

_____

[3] While Petitioner's charges concerned two similar crimes on different dates, the statement of facts from the appellate court opinion relate only to the events on or around July 28,

In an amended Information arising from events that took place on or about July 28, 2017 and October 12, 2017 respectively, Petitioner was charged with two counts (counts one and three) of unlawfully taking and driving a vehicle in violation of Cal. Vehicle Code § 10851(a) and two counts in the alternative (counts two and four) of unlawfully buying, receiving, concealing, selling and withholding a stolen motor vehicle and aiding in concealing, selling and withholding a motor vehicle in violation of Cal. Penal Code § 496d, each with the additional allegations that Petitioner had been twice convicted previously of felony vehicle theft under Cal. Vehicle Code § 10851 within the meaning of Cal. Penal Code § 666.5(a) and of a felony violation of Cal. Penal Code § 496d within the meaning of Cal. Penal Code § 666.5(a), as well as that counts three and four were committed while Petitioner was released from custody on bail pending judgment on an earlier felony offense within the meaning of Cal. Penal Code § 12022.1(b).  (CT 14-17; see also Reporter's Transcript ["RT"] 629-30 [ECF No. 7, Lodgment No. 2] (charges in the alternative).)  It was also alleged that Petitioner had two or more prior felony convictions within the meaning of Cal. Penal Code § 1203(e)(4), including three prison priors under Cal. Penal Code §§ 667.5(b) and 668, and one strike prior under Cal. Penal Code §§ 667(b)-(i), 1170.12, and 668.  (CT 18-19.)

On March 22, 2018, after a jury trial, the jury found Petitioner guilty on count one, unlawfully taking and driving a vehicle in violation of Cal. Vehicle Code § 10851(a), returned no verdict on count two, and found Petitioner not guilty on counts three and four. (CT 111-13, 115, 331.)  Petitioner waived a trial by jury on the priors and related allegations.  (CT 338.)  After a March 26, 2018 court trial, the trial court found true that Petitioner had the following prior auto-theft related convictions, including probation denial priors pursuant to Cal. Penal Code § 1203(e)(4), and three prison priors pursuant to Cal. Penal Code § 667.5(b), consisting of convictions dated January 22, 2007 and March 7,

---

2017, as Petitioner was acquitted of both charged counts arising from the events on or around October 12, 2017.  (See CT 111-13, 115, 331.)

2012 for violations of Cal. Vehicle Code § 10851(a) and a September 9, 2008 conviction for a violation of Cal. Penal Code § 496d.  (CT 337-38.)  The trial court found Petitioner had a strike prior pursuant to Cal. Penal Code §§ 667(b)-(i) and 1170.12, stemming from a June 15, 1995 conviction for violations of Cal. Penal Code § 211/212.5, which was a prior serious felony conviction pursuant to Cal. Penal Code § 1192.7(c)(19).  (Id.)

On appeal and under the name of Paul Ensslin, Petitioner's counsel submitted a brief in accordance with People v. Wende, 25 Cal. 3d 436 (1979) and Anders v. California, 386 U.S. 738 (1967), requesting the appellate court "independently review the entire record on appeal in this case to determine whether the record reveals any issues which would, if resolved favorably to appellant, result in reversal or modification of the judgment."  (ECF No. 7-13 at 8, Lodgment No. 3.)  In a decision issued on December 19, 2018, the state appellate court affirmed the judgment, indicating that after review of the record, no reversible error was found.  (ECF No. 7-14.)

On February 7, 2019, now under the name Geoffrey Underdahl, Petitioner filed a habeas petition in the California Supreme Court, raising two claims, including (1) a claim alleging "motions were ignored no objections voiced," misstatements of fact in the appellate brief, commingling of cases, errors in jury instructions, prejudice arising from the jury seeing him in holding, and errors in witness identification testimony and (2) a claim alleging a variety of sentencing errors.  (ECF No. 7-15 at 3-4, Lodgment No. 5.)  On July 10, 2019, the California Supreme Court denied the petition in an order that stated: "The petition for writ of habeas corpus is denied.  (See People v. Duvall (1995) 9 Cal.4th 464, 474 [a petition for writ of habeas corpus must include copies of reasonably available documentary evidence]; In re Swain (1949) 34 Cal.2d 300, 304 [a petition for writ of habeas corpus must allege sufficient facts with particularity].)  Kruger, J., was absent and did not participate."  (ECF No. 7-16, Lodgment No. 6.)

///

///

///

On March 1, 2019, Petitioner filed another habeas petition in the California Supreme Court raising two claims, including claims alleging: (1) ineffective assistance of trial counsel and illegal sentence for failing to develop exculpatory evidence, permitting the merger of two theories in instructions to the jury, resulting in error and failing to object to the misinformation provided to the jurors and (2) Petitioner was tried without a competency evaluation in violation of state and federal law.  (ECF No. 7-17 at 3-4, Lodgment No. 7.)  On July 10, 2019, the California Supreme Court denied the petition without a statement of reasoning or citation to authority.  (ECF No. 7-18, Lodgment No. 8.)

On June 14, 2019, on appeal from a post-judgment order, Petitioner's counsel submitted a second brief in accordance with <u>Wende</u> and <u>Anders</u>, requesting the appellate court "independently review the entire record on appeal in this case to determine whether the record reveals any issues which would, if resolved favorably to appellant, result in reversal or modification of the judgment."  (ECF No. 7-19 at 5, Lodgment No. 9.)  In an order filed July 23, 2019, the California Court of Appeal noted Petitioner was given the opportunity to file a brief yet "presents a rambling assortment of documents, arguments and opinions from defendant relating solely to his trial, conviction and counsel's representation at trial," even though "this appeal is from a March 2019 post judgment order denying defendant's request for a sentence modification," and as such, "none of the materials filed by defendant relate to any potential issues on this appeal" and were not necessary to consider in the matter before the court.  (ECF No. 17-20 at 2-3.)  The state appellate court indicated that after review of the entire record pursuant to both <u>Wende</u> and <u>Anders</u>, "[w]e have not discovered any arguable issues for reversal on appeal" and affirmed the order denying the motion to modify Petitioner's sentence.  (<u>Id.</u> at 3-4.)

On April 30, 2020, Petitioner filed another habeas petition in the California Supreme Court raising three enumerated claims, alleging: (1) three motions in limine were ignored, including one relating to the contents of a 911 call, one regarding a failure to redact photos, and one relating to late discovery, and sentencing rules were ignored, (2) ineffective assistance of counsel, noting Petitioner was not allowed to take the stand and should have

been stabilized on the correct medication, an issue his lawyer was aware of, and indicating the <u>Wende</u> brief misstated facts, and (3) excessive and illegal sentence.  (ECF No. 7-21 at 3-4, 7, Lodgment No. 11.)  On July 15, 2020, the California Supreme Court denied the petition in an order that stated: "The petition for writ of habeas corpus is denied.  (See <u>People v. Duvall</u> (1995) 9 Cal.4th 464, 474 [a petition for writ of habeas corpus must include copies of reasonably available documentary evidence]; In re Swain (1949) 34 Cal.2d 300, 304 [a petition for writ of habeas corpus must allege sufficient facts with particularity].)"  (ECF No. 17-22, Lodgment No. 12.)

On August 7, 2020, the California Court of Appeal dismissed Petitioner's appeal of a post judgment order denying his motion to modify his sentence under Cal. Penal Code § 1016.8, noting that "[w]here, as here, the trial court did not have jurisdiction to modify the defendant's sentence, the court's order denying resentencing is not an appealable order."  (ECF No. 7-23, Lodgment No. 13) (citations omitted).

On August 18, 2020, Petitioner filed another habeas petition in the California Supreme Court raising two claims alleging the court unlawfully denied (1) his motion for sentence modification and (2) his appeal of that denial.  (ECF No. 7-24 at 3-4, Lodgment No. 14.)  On November 10, 2020, during the pendency of the instant federal action, the California Supreme Court denied that petition.  (<u>See</u> Case No. S263967 at https://appellatecases.courtinfo.ca.gov/search.cfm?dist=0, last visited December 15, 2020.)

## II.   **PETITIONER'S CLAIMS**

(1)   Trial and appellate counsel violated Petitioner's Sixth Amendment right to the effective assistance of counsel, where trial counsel: (a) failed to file a motion to dismiss based on the violation of three motions in limine, (b) told Petitioner he was not capable of taking the stand despite Petitioner's stated desire to testify, (c) failed to take action concerning Petitioner's medication and resultant panic attacks despite awareness of the issue, (d) failed to move for new jury when prospective jurors saw Petitioner in holding, (e) failed to object when the prosecutor erroneously argued

Petitioner was wearing the same clothing in photos, (f) agreed to jury instructions addressing an improper mix of cases and resulting in confusion, (g) failed to object to a "commingling of cases," (h) failed to move to suppress an illegal identification of Petitioner, and where appellate counsel (i) misstated the facts in the <u>Wende</u> appellate brief, which the state appellate court echoed.  (ECF No. 1 at 6, 8.)

(2)    Petitioner is serving an "illegal and excessive sentence" due to factual errors committed by the sentencing court concerning the consideration of both his prior conviction and his sentence and Petitioner should be resentenced or his sentence modified due to recent changes in state law concerning consideration of strikes and prison priors.  (ECF No. 1 at 7, 9.)

## III.    DISCUSSION

### A.    Standard of Review

This petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  Pursuant to AEDPA, a state prisoner is not entitled to federal habeas relief on a claim that the state court adjudicated on the merits, unless it: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  <u>Harrington v. Richter</u>, 562 U.S. 86, 97-98 (2011), quoting 28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000).  A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  <u>Id.</u>; <u>Bruce v. Terhune</u>, 376 F.3d 950, 953 (9th Cir. 2004).

With respect to section 2254(d)(2), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable– a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007), citing Williams, 529 U.S. at 410. "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" Rice v. Collins, 546 U.S. 333, 338-39 (2006), quoting 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 562 U.S. at 101, quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Richter, 562 U.S. at 102.

In a federal habeas action, "[t]he petitioner carries the burden of proof." Cullen v. Pinholster, 563 U.S. 170, 181 (2011), citing Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam). However, "[p]risoner pro se pleadings are given the benefit of liberal construction." Porter v. Ollison, 620 F.3d 952, 958 (9th Cir. 2010), citing Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

**B.   Claims**

**1.   Claim One**

Petitioner contends that his Sixth Amendment right to the effective assistance of counsel was violated by defense counsel's numerous failures during the trial proceedings and appellate counsel's failures on direct appeal. (ECF No. 1 at 6, 8.) Respondent maintains that habeas relief is unavailable because the contentions raised in Claim One are not exhausted but the Court should deny the claim regardless of the failure to exhaust because the claims are meritless. (ECF No. 6 at 2.)

As an initial matter, Respondent contends Petitioner's nine claims of ineffective assistance of counsel are unexhausted because, of the three petitions ruled on by the state supreme court, "[t]he only petition adjudicated on the merits addressed competency to stand trial and sentencing issues."  (ECF No. 6-1 at 8, citing ECF Nos. 7-17, 7-18, Lodgment Nos. 7, 8.)

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." Picard v. Connor, 404 U.S. 270, 275 (1971); see also 28 U.S.C. §§ 2254(b) and 2254(c).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." Picard, 404 U.S. at 275.  "In order to 'fairly present' an issue to a state court, a petitioner must 'present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.'" Gulbrandson v. Ryan, 738 F.3d 976, 992 (9th Cir. 2013), quoting Scott v. Schriro, 567 F.3d 573, 582 (9th Cir. 2009); see also Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999) ("The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis."), citing Duncan v. Henry, 513 U.S. 364, 365 (1995) and Correll v. Stewart, 137 F.3d 1404, 1411-12 (9th Cir. 1998).

Upon review, it appears Petitioner failed to raise the legal basis of Claim One subparts (a), (d), (e), (g) and (h), ineffective assistance of counsel, in the California Supreme Court.  With respect to Claim One subparts (a), (d), (g), and (h), Petitioner appears to have only presented related allegations to the state court, alleging in the February 7, 2019 habeas petition "motions were ignored no objections voiced," errors in jury instructions, commingling of cases, and errors in witness identification testimony, but failing to allege ineffective assistance of counsel as to any of those asserted errors.  (See ECF No. 7-15 at 3-4.)  Because the factual allegations lacked reference to ineffective assistance of counsel as now raised in the instant Petition, Petitioner failed to "fairly present" the legal basis of these contentions to the state court prior to presenting them in

federal court.  See e.g. Gulbrandson, 738 F.3d at 992, quoting Scott, 567 F.3d at 582; see also Duncan, 513 U.S. at 366 ("[M]ere similarity of claims is insufficient to exhaust."), citing Picard, 404 U.S. at 276 and Anderson v. Harless, 459 U.S. 4, 6 (1982).  As such, Claims One subparts (a), (d), (g) and (h) are unexhausted.[4]  After review of Petitioner's state habeas petitions, it also does not appear Petitioner ever presented either the factual or legal basis of Claim One subpart (e), concerning trial counsel's alleged failure to object to the prosecutor's misstatements, in the state supreme court.  As such, Claim One subpart (e) is also unexhausted.

In this instance, Petitioner's failure to exhaust does not preclude the Court from adjudicating these contentions because, for the reasons discussed below, Claim One subparts (a), (d), (e), (g) and (h) each clearly fail on the merits.  While relief may not be granted on an unexhausted claim, the Court may exercise discretion to deny a claim on the merits despite a petitioner's failure to fully exhaust state judicial remedies.  See 28 U.S.C. § 2254(b)(2); Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir 2005) ("[A] federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim.")

In contrast, it appears that Petitioner raised Claim One subpart (f), in the March 1, 2019 habeas petition filed in the California Supreme Court.  In the federal Petition, Petitioner alleges as part of Claim One there was an "[i]mproper mix of cases for a jury instruction agreed to where jury was confused."  (ECF No. 1 at 8.)  In that state petition, Petitioner asserted ineffective assistance of counsel, alleging in relevant part "[t]he trial

---

[4] Petitioner also appears to have raised Claim One subpart (a) in the April 30, 2020 state habeas petition, but again similarly alleged only "three motions of limine were ignored." (See ECF No. 7-21 at 3.)  Given the lack of reference to, or any allegations of, ineffective assistance of counsel, the Court is also obliged to conclude Petitioner failed to "fairly present" to the state supreme court the legal basis of his current federal claim in that petition.  See e.g. Gulbrandson, 738 F.3d at 992, quoting Scott, 567 F.3d at 582.

counsel permitted the merger of two theory," "[t]he juror in error was direct [sic] to take under consideration jury instruction related to drug possession and not depriving an owner of his vehicle without consent," and "[t]rial counsel failed to object to the misinformation conveyed to the jury."  (ECF No. 7-17 at 4.)  The California Supreme Court denied the habeas petition without a statement of reasoning or citation to authority.  (ECF No. 7-18.) The Court finds Petitioner "fairly presented" Claim One, subpart (f) to the state supreme court by alleging ineffective assistance of counsel along with the factual allegations concerning his claim of error arising from trial counsel's alleged failure to object to the jury instructions at issue.  See Picard, 404 U.S. at 275; see also Gulbrandson, 738 F.3d at 992.  Accordingly, Claim One subpart (f) is exhausted.

It also appears Claims One subparts (b), (c), and (i) were presented in the April 30, 2020 petition filed in the California Supreme Court, in which Petitioner asserted "I was not allowed to take the stand" and "I needed my lawyer to let me take the stand" (Claim One, subpart (b)), "I also feel I should have been stabilized on the right medication" and "My law[y]er was aware of my mental concerns" (Claim One, subpart (c)), and asserting 'I believe these were issues of innifective [sic] consoul [sic]'"; in the claim, Petitioner also cited to a supporting exhibit described as "Wende brief misstates facts" (Claim One, subpart (i)).  (ECF No. 7-21 at 4.)  However, as noted above, the California Supreme Court denied that petition in an order that stated: "The petition for writ of habeas corpus is denied. (See People v. Duvall (1995) 9 Cal.4th 464, 474 [a petition for writ of habeas corpus must include copies of reasonably available documentary evidence]; In re Swain (1949) 34 Cal.2d 300, 304 [a petition for writ of habeas corpus must allege sufficient facts with particularity].)"  (ECF No. 17-22.)

The Court acknowledges that a state court denial with citation to these two cases has been treated as a denial with leave to amend, which leaves remedies available, rather than any sort of final adjudication.  See e.g. Curiel v. Miller, 830 F.3d 864, 869 (9th Cir. 2016) ("We understand the California Supreme Court's denial of a habeas petition with citations to Swain and Duvall in conjunction as, "'in effect, the grant of a demurrer, i.e., a holding

that (the petitioner) ha(s) not pled facts with sufficient particularity.'") (footnote omitted), citing <u>Gaston v. Palmer</u>, 417 F.3d 1030, 1039 (9th Cir. 2005), rehearing granted, opinion modified on other grounds, 447 F.3d 1165 (9th Cir. 2006); <u>see also</u> <u>King v. Roe</u>, 340 F.3d 821, 823 (9th Cir. 2003) (recognizing that a state court denial citing <u>Duvall</u> and <u>Swain</u> "require[s] that one must allege with sufficient particularity the facts warranting habeas relief and allow[s] amendment to comply."), overruled on other grounds by <u>Evans v. Chavis</u>, 546 U.S. 189 (2006).

As Respondent correctly observes, because the California Supreme Court's denial of the April 30, 2020 petition with citations to <u>Duvall</u> and <u>Swain</u> left state remedies available, the Court must independently review the state petition to decide if Petitioner "fairly presented" his claims to the state court.  (See ECF No. 6-1 at 8, citing <u>Gaston</u>, 417 F.3d at 1039 and <u>Kim v. Villalobos</u>, 799 F.2d 1317, 1320 (9th Cir. 1986) ("The state courts, by denying a writ for lack of particularity when the claims are alleged with as much particularity as is practicable, cannot forever preclude the petitioner from reaching federal court. Such a result would defeat the purposes of section 2254. It is therefore incumbent upon us, in determining whether the federal standard of 'fair presentation' of a claim to the state courts has been met, independently to examine [Petitioner's] petition' to the California Supreme Court.")  Here, it is evident Petitioner fairly presented Claim One subparts (b) and (c), given that Petitioner not only articulated the factual basis of those contentions, in (b) that he was not allowed to take the stand and his attorney should have allowed him to take the stand and in (c) that he should have been stabilized on the correct medication and his attorney was aware of the matter and plainly alleged the legal basis, arguing that each were issues of ineffective assistance of counsel.  (See ECF No. 7-21 at 4.)  The Court finds Claim One subparts (b) and (c) were presented to the state supreme court.  However, because it is unclear whether the state court adjudicated those claims on the merits and because in any event the claims fail on the merits under even a de novo review, the Court will review these claims de novo.  <u>See</u> <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002) ("[W]hen it is clear that a state court has not reached the merits of a

properly raised issue, we must review it de novo."); see also Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, see § 2254(a).")

Upon review, Claim One subpart (i) presents a distinct question on exhaustion. Petitioner did not list the alleged misstatements in the Wende brief under the grounds for relief articulated in the April 30, 2020 state habeas petition.  Instead, Petitioner cites to an exhibit, Exhibit J, which is solely described as "Wende brief misstates facts" under the "supporting documents" section of the petition form.  (ECF No. 7-21 at 4.)  The Court recognizes the exhibit is a supporting document to a claim of ineffective assistance of counsel, yet it is apparent that the factual instances identified in the state petition only raise allegations of ineffective assistance of *trial* counsel, and not *appellate* counsel.  (See id.) As such, given that Petitioner did not articulate or specifically allege a legal claim of ineffective assistance of appellate counsel in state court and because an examination of Exhibit J reflects that it contains only the appellate court opinion and not a copy of the Wende brief at issue in Petitioner's claim, nor does Petitioner offer any factual contentions identifying alleged inaccuracies in the Wende brief itself, the Court is unable to conclude either the legal or factual basis of Claim One subpart (i) was fairly presented to the state court.  See e.g. Weaver, 197 F.3d at 364 (9th Cir. 1999) ("The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis."), citing Duncan, 513 U.S. at 365 and Correll, 137 F.3d at 1411-12.  Accordingly, the Court finds Claim One subpart (i) is unexhausted. However, for the same reasons discussed above with respect to Claim One subparts (a), (d), (e), (g), and (h), and because it clearly fails on the merits, the Court will also exercise discretion to deny Claim One subpart (i) on the merits despite Petitioner's failure to exhaust.  See 28 U.S.C. § 2254(b)(2); see also Gatlin, 189 F.3d at 889; Cassett, 406 F.3d at 624.

### a.  Alleged failure to file a motion to dismiss

Petitioner contends "there was no motion to dismiss on the grounds that three motions in limine were violated," citing to three exhibits attached to the Petition in support of this claim. (ECF No. 1 at 6, 13-27.)  Respondent maintains this claim, that trial counsel was ineffective for failing to move to dismiss based on three events, including a witness improperly testifying about the substance of a 911 call, the prosecution providing late discovery and the improper redaction of photos, is both unexhausted and meritless. (ECF No. 6-1 at 9, citing ECF No. 1 at 13-27.)   While unexhausted, it is of no consequence to the outcome because Petitioner's argument lacks merit for the reasons discussed below.

Under the clearly established standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), "a defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009), citing Strickland, 466 U.S. at 687. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Moreover, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. To demonstrate prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.

With respect to the first allegation, Exhibit A to the Petition is entitled "motion to not reference 911 call gone against" and includes two trial transcript pages reflecting the trial court granted a defense motion not to reference specifics of a 911 call, as follows:

[Defense counsel]: With regard to the Mossy Nissan case, the officers responded to, essentially, a disturbing the peace, but there is a statement in the report that he was attempting to get a female into the vehicle. I would ask that that not be admitted before the jury and that it be a vague reference that officers responded to some sort of a call but without the details of it.

The Court:   Okay.  That will be granted.

(ECF No. 1 at 13-14; see also RT 321.)  During trial, the prosecutor had an exchange with a law enforcement witness which prompted a defense objection, as follows:

Q:   During your investigation, you learned that the vehicle was initially at the Chevron gas station?

A:   That's where the call came from.  That's what the person that called said they had observations on a male trying to got [sic] a female into a car.  It looked like - -

[Defense Counsel]:       Objection. Nonresponsive.  Move to strike.

The Court:   Wait.  That's not what she asked.  You got to listen to her question and just answer her question.  [¶] So disregard everything that came after basically that's what the call said it was.  Everything beyond that you don't consider.  It has nothing to do with this case.

(ECF No. 1 at 15; see also RT 378.)

Respondent correctly points out that "[c]ounsel objected to the witness's testimony regarding the 911 call and the court struck the complained-of remark."  (ECF No. 6-1 at 9, citing RT 378.)  In the Traverse, Petitioner acknowledges trial counsel objected to the testimony but argues that "the damage was done" and trial counsel should have moved to "amend" or "dismiss" given the prosecutor's failure to admonish the witness.  (ECF No. 11 at 14.)  Upon review, the Court finds no fault with trial counsel's performance.  As the record reflects, the trial court struck the contested remarks and promptly instructed the jurors to "disregard everything that came after basically that's what the call said it was. Everything beyond that you don't consider.  It has nothing to do with this case."  (RT 378.)  Contrary to Petitioner's unsupported assertion that "the damage was done," this Court must

presume the jurors understood and followed the trial court's explicit instructions to disregard those remarks. <u>See</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000); <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1989).  The Court also "must indulge a strong presumption that counsel's conduct," in this instance, counsel's decision to object to the remarks immediately after they were made and request they be stricken, "falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  Petitioner fails to overcome the "strong presumption" that counsel's actions were reasonable, particularly given the trial court agreed with counsel's objection, struck the remarks at issue and immediately admonished the jurors to disregard. <u>Id.</u>; (<u>see</u> <u>also</u> RT 378.)  Moreover, even were Petitioner somehow able to demonstrate deficient performance arising from trial counsel's failure to pursue other potential remedies, given the trial court's prompt and specific instructions to the jury to disregard, the Court finds no possibility of prejudice. <u>See</u> <u>Mirzayance</u>, 556 U.S. at 122 ("[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel."), citing <u>Strickland</u>, 466 U.S. at 687.

With respect to the late discovery of photographs taken by law enforcement on October 12, 2017, the record reflects trial counsel requested the jury be instructed in accordance with CALCRIM 306 concerning prejudice arising from the untimely disclosure of evidence.  (<u>See</u> RT 604, citing CALCRIM 306); (<u>see</u> <u>also</u> CT 73) (proposed jury instruction.)  Specifically, defense counsel asserted that "had I had these pictures earlier, I think it may have changed the manner in which or the investigation that we would have done, but I didn't have any of the pictures at all in this case.  I was under the assumption that there were not pictures," and stated she was unaware the prosecutor had pictures until they were marked as exhibits.  (RT 604.)  In response, the trial court reasoned and ruled: "Okay.  So first off, I don't doubt that it wasn't turned over in a timely manner.  But as far as the prejudicial effect, based upon the testimony of the various officers and what they observed and what's in their reports, it appears that everything that is indicated in these pictures would be something that could be gleaned from the report and/or by visiting the

scenes.  And so I don't see that there was a prejudicial effect.  So I'm going to deny that."
(RT 605.)

Petitioner again fails to overcome the "strong presumption" that trial counsel's actions, in requesting a jury instruction concerning the late discovery and the resultant prejudice, was not "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Nor does Petitioner show the untimely discovery would have provided grounds for a successful motion to dismiss, especially given the trial court's reasonable assessment that the substance of the pictures could also have been obtained by the police reports or visiting the scene.  Moreover, Petitioner was acquitted on both counts relating to the events on or about October 12, 2017.  (See CT 111-12, 331.)  As such, even in the event Petitioner were able to satisfy the performance prong, the contention stills fail for lack of prejudice.  See Mirzayance, 556 U.S. at 122 ("[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel."), citing Strickland, 466 U.S. at 687.

As for Petitioner's final contention, Petitioner cites to a portion of the clerk's transcript reflecting a defense request to sanitize exhibits to exclude reference to "prior vehicle theft or criminal charges" and the trial court stating: "I'll grant it in part that the jail or bail bond reference cannot be made, but it can be referred to as legal documents that has his name on it."  (ECF No. 1 at 26, RT 320.)  Upon review of the record, the defense specifically asked to "exclude any testimony or mention of the jail or bail bond paperwork that was located within the Toyota," the prosecutor noted it would require redactions to photos of the paperwork, and the trial court specifically directed "in any photos, just make sure that the jail or bail bond indication or anything indicating a criminal proceeding is redacted."  (RT 319, 321.)  Later, during trial proceedings, defense counsel noted that exhibits shown to the jury on slides reflected "People versus Underdahl," the name of Petitioner's aka, rather than Ensslin, the surname Petitioner was tried under.  (ECF No. 1 at 27, RT 551.)  First, Petitioner fails to show that the inclusion of his aka was a violation of the trial court's ruling, which concerned redactions to photos of paperwork about

Petitioner's bail or prior proceedings and did not reference sanitizing labels on slides concerning the instant trial proceedings themselves.  In any event, once defense counsel objected, the prosecutor replied he would use photos from a different source in closing arguments without tags or labels, to the agreement of both the trial court and defense counsel.  (RT 552.)  On this record, Petitioner cannot overcome the "strong presumption" that trial counsel's actions were "within the wide range of reasonable professional assistance" particularly given the lack of demonstrated violation of the trial court's ruling. Strickland, 466 U.S. at 689.  Moreover, because Petitioner has not shown the trial court's order was violated such that it would provide grounds in support of a motion to dismiss, the claim also fails for lack of prejudice.  Mirzayance, 556 U.S. at 122, citing Strickland, 466 U.S. at 687.  Accordingly, Claim One subpart (a) does not merit habeas relief.  Cassett, 406 F.3d at 624.

### b.    Alleged denial of Petitioner's right to testify

Petitioner asserts he "told counsel that Petitioner needed to take the stand" and "was told no, not capable of taking stand."  (ECF No. 1 at 6.)  Respondent maintains this contention is "cursory and unsupported" because "[i]t is not clear whether Underdahl is alleging that counsel advised him not to testify or if counsel refused to call him to the stand despite an instance [sic] on testifying," and Petitioner failed to submit either a declaration by counsel or a statement indicating what his trial testimony would have been.  (ECF No. 6-1 at 10.)  In the Traverse, Petitioner indicates: "I was clear in all my writs that I wished to take the stand, yet my lawer [sic] thought because of my mental issues that would be a bad idea" and indicates his statements to police reflect what his trial testimony would have been.  (ECF No. 11 at 15.)  As discussed above, the Court's review of this claim is de novo.

Petitioner cites to Exhibit D to the Petition in support of his contention, which includes what appears to be a portion of a probation report concerning Petitioner's July 28, 2017 arrest, with highlighted sections including Petitioner's apparent denial that he stole the vehicle he and his girlfriend were found in, and Petitioner's indication to police that he "borrowed the vehicle from a female who works at Mossy Nissan" and "[h]e was her

designated driver because she was intoxicated." (ECF No. 1 at 29.)  This exhibit also appears to include multiple pages from the trial transcripts with handwritten notations indicating "did not investigate the othe[r] property" and "needed to take stand."  (Id. at 30-46.)

The Court must examine Petitioner's claim that trial counsel denied him his right to testify pursuant to the ineffective assistance of counsel standard set forth in Strickland.  See Medley v. Runnels, 506 F.3d 857, 861 (9th Cir. 2007) (en banc).  Here, Petitioner states when he told counsel he wanted to testify, Petitioner "was told no, not capable of taking stand." (ECF No. 1 at 6.)  Petitioner offers no record support for this assertion, such as a declaration from trial counsel or from Petitioner himself as to exchanges he and trial counsel had on the matter of his prospective trial testimony or when such conversations occurred.  Nor does the trial record reflect that Petitioner ever indicated to the trial court a desire to testify, as Petitioner remained silent when the defense rested its case without presenting witnesses or evidence.  (See RT 595); see also United States v. Pino-Noriega, 189 F.3d 1089, 1095 (9th Cir. 1999) ("When a defendant remains 'silent in the face of his attorney's decision not to call him as a witness,' he waives the right to testify."), quoting United States v. Nohara, 3 F.3d 1239, 1244 (9th Cir. 1993).

In any event, even were Petitioner able to demonstrate that trial counsel's performance fell below constitutional guarantees in advising or counseling Petitioner not to testify at trial, the claim also fails for lack of prejudice.  Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.")  Here, as to what the substance of his trial testimony would have been, Petitioner refers to his statements to the police denying he stole the vehicle, stating he had instead borrowed it from a woman who worked at the dealership and he was her designated driver.  However, given the testimony from a

dealership sales manager that when he saw Petitioner driving the car, "[a]s soon as that person sees me, he turned right to the park-and-drive and then looked like he got panicked, and all of a sudden he ran around and sped away," and thereafter made attempts to evade the sales manager, who was following in another car for about 20 minutes while on the phone with the dealership's general manager to confirm the car had not been sold and to report it stolen.  (RT 383, 387-88.)  Moreover, as the appellate court recognized, "[t]he sales manager returned to the dealership and reviewed surveillance video from approximately 2:00 a.m. that day, which showed a man walking through the lot trying to open car doors and eventually driving off in the car in which Ensslin was later arrested." (ECF No. 7-14 at 2-3.)  In view of this strong evidence, particularly the surveillance video showing a man trying to open car doors before driving off in the car in question, the same car in which Petitioner was later found sitting in the driver's seat, Petitioner fails to show that his prospective testimony, that he borrowed the car from an employee and was serving as her designated driver, would have made any difference to the outcome of the trial proceedings.  In the absence of any such showing, the Court is unable to conclude that the allegedly deficient performance by trial counsel in connection with Petitioner's prospective trial testimony resulted in prejudice.  See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.")  Because Claim One subpart (b) fails under even a de novo review, habeas relief is not warranted.

### c.  Alleged failure to act re: Petitioner's medication and panic attacks

Petitioner asserts the medication he was taking negatively affected his bipolarism, causing panic attacks, he required correct medication to proceed effectively and his counsel was told of this and was also aware of Petitioner's past psychotic breaks.  (ECF No. 1 at 6.)  Respondent maintains this claim is "both unexhausted and meritless as cursory and unsupported."  (ECF No. 6-1 at 10.)  As discussed above, the Court finds this contention was presented to the state supreme court but de novo review is appropriate.

In support of his argument that trial counsel rendered ineffective assistance in failing to act with respect to Petitioner's medication and resultant panic attacks, Petitioner cites to Exhibit K to the Petition, which appears to include three separate documents.  (See ECF No. 1 at 142-45.)  The first document reflects in relevant part a correction to a minute order dated June 7, 2006, adding the following: "[P]atton state hospital is authorized to administer involuntary [a]ntipsychotic medication to the defendant when and as prescribed [b]y the defendant's treating physician."  (ECF No. 1 at 143.)  The second document appears to reflect patient discharge instructions dated September 5, 2018 directing Petitioner to continue taking a medication once daily "For ADHD," with a handwritten notation appearing to be from Petitioner indicating "wrong medication for a pschiopative [sic] was haveing [sic] panic attacks."  (Id. at 144.)  The third document appears to be a portion of a report dated April 27, 2018, possibly a probation report, reflecting Petitioner was "diagnosed with bipolar disorder and anxiety" in 2000 and was taking two medications.  (Id. at 145.)  While the relevance of the first document is unclear given that it is dated 2006 and the instant crime and trial took place in July 2017 and March 2018, respectively, the fact remains that none of the three documents support Petitioner's contention that he was experiencing problems with his medications, much less that trial counsel was aware of the matter and failed to act.  Each document instead simply reflects that at varying times Petitioner was under directions to take medications for various mental health conditions.  Petitioner again fails to offer any support for his allegations of deficient performance, such as a declaration from trial counsel or himself indicating that counsel was aware of any problems with the medications and failed to take appropriate action.  Given the lack of record support for Petitioner's assertion that trial counsel acted deficiently concerning Petitioner's medications coupled with the presumption that counsel's conduct was reasonable, the Court cannot conclude that trial counsel's performance fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; see also id. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.")

Even assuming Petitioner could demonstrate counsel rendered deficient performance in failing to act on this matter, Petitioner fails to demonstrate prejudice. Petitioner indicates only that he was having panic attacks and required appropriate medication, but Petitioner does not assert he was unable to understand the proceedings or assist with his own defense in the absence of different medication or dosages.  Nor is there any indication from the record Petitioner was not competent to proceed, unable to follow or participate in the proceedings, or assist in his own defense.  The record also does not reveal that Petitioner ever raised any such concerns with the trial court.  Instead, the record reflects that Petitioner attended and participated in the trial proceedings as well as made a statement at his sentencing.  (See e.g. RT 650-51 (waiver of jury trial on priors and out on bail allegation); RT 1025-27 (statement at sentencing).)  In the absence of any indication as to what actions trial counsel should have taken or how they would have made a difference given Petitioner's demonstrated ability to follow and participate in the trial proceedings, the Court remains unpersuaded that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Accordingly, because this claim fails under even a de novo review, habeas relief is habeas relief is unavailable on Claim One subpart (c).

### d. Alleged failure to move for a new jury

Petitioner asserts trial counsel failed to move for a new jury when jurors entered the courtroom when he was in holding, alleging the jurors were biased towards him.  (ECF No. 1 at 6.)  Respondent maintains the lack of any declaration articulating how this resulted in prejudice renders Petitioner's claim meritless and given the trial court's response, Petitioner fails to show trial counsel acted deficiently.  (ECF No. 6-1 at 11.)  In the Traverse, Petitioner insists the two jurors who saw him should have been dismissed "as they were biased as to my level of freedom therefore guilt."  (ECF No. 11 at 15.)

Petitioner submits Exhibit M to the Petition in support of this claim, which is a page from the clerk's transcript in the case reflecting an incident during voir dire proceedings where: "Court convenes with counsel as noted above and defendant are present.  Out of the

presence of the jury, [Defense Counsel] informs the Court that two prospective jurors entered the courtroom while Mr. Ensslin was in the back in the holding tank.  The Court notes that the prospective jurors could have assumed Mr. Ensslin was in the restroom." (ECF No. 1 at 154, CT 324.)

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."  Irvin v. Dowd, 366 U.S. 717, 722 (1961).  However, in this instance, in addition to failing to show that the two prospective jurors who entered the courtroom while he was in the back in holding even noticed Petitioner's absence much less divined the correct reason for it rather than assuming he was in the restroom, Petitioner also fails to demonstrate that either or both of the two individuals in question actually sat on the jury that heard his case.  Without any support for either assertion, the Court is unable to conclude that Petitioner's jury contained a biased juror.  See Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998) (en banc) ("The Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent jurors.  The bias or prejudice of even a single juror would violate [Petitioner's] right to a fair trial."); see also Ross v. Oklahoma, 487 U.S. 81, 86 (1988) ("Any claim that the jury was not impartial, . . . must focus . . . on the jurors who ultimately sat.")  On this record and in particular the absence of any evidence of bias by a seated juror, the Court finds no fault in trial counsel's performance, much less any potential for prejudice.  Mirzayance, 556 U.S. at 122 ("[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel."), citing Strickland, 466 U.S. at 687.  For these reasons, Claim One subpart (d) lacks merit and habeas relief is unavailable.  Cassett, 406 F.3d at 624.

### e.    Alleged failure to object to false statement by prosecutor

Petitioner contends that trial counsel failed to object when the prosecutor erroneously stated Petitioner was wearing the same clothing in photos.  (ECF No. 1 at 6.)  Respondent maintains this contention is both unexhausted and meritless.  (ECF No. 6-1 at 11.)  In the Traverse, Petitioner states: "I will recind [sic] my objection to the lack of argumet [sic] against the lack of objection to the prosecuting attorneys asserting to the fact

I was wearing the same cloths [sic], I have no statement from my attorney and it may have been tactical." (ECF No. 11 at 16.)  While Claim One subpart (e) is unexhausted, it makes no difference to the outcome because it also fails on the merits.

In support of this claim, Petitioner cites to Exhibit N to the Petition, which includes a portion of the prosecution's rebuttal argument in closing to the jury. (ECF No. 1 at 156, RT 686.)  After asserting the defense wanted jurors to ignore the surveillance video and just prior to asserting the defense wanted jurors to ignore a witness's in-court identification of Petitioner, the prosecutor argued: "What else do they want you to ignore?  The photographs.  The photographs of Mr. Ensslin when he's caught in the driver's seat of that car.  He's wearing the same clothing almost to the 'T' that he's wearing in those photographs." (Id.)

First, while Petitioner asserts the prosecutor's statement was not true, he fails to offer any support for this contention and the record does not appear to support his assertion.  A review of the trial record instead reflects that photos taken of Petitioner when the police found him in the driver's seat of the vehicle showed Petitioner was wearing a black hat, long-sleeved black shirt and shorts. (RT 351-52, 358.)  Meanwhile, the sales manager who followed the car testified that the individual driving it was wearing a black baseball cap backwards and a t-shirt. (RT 393, 420-21.)  Based on the Court's review of the trial record, the contested remarks appear do not appear false, but instead appear to be "reasonable inferences" from the trial testimony and fall within the bounds of acceptable comments on the evidence.  See e.g. Menendez v. Terhune, 422 F.3d 1012, 1037 (9th Cir. 2005) ("The prosecutor may argue reasonable inferences from the evidence presented, which is precisely what he did here."), citing United States v. Young, 470 U.S. 1, 8 & n.5 (1985).  Moreover, as "[j]udicial scrutiny of counsel's performance must be highly deferential," the Court cannot simply cannot conclude trial counsel's failure to object, particularly during closing argument, was not a tactical decision deserving of deference.  Strickland, 466 U.S. at 689; see also Cunningham v. Wong, 704 F.3d 1143, 1159 (9th Cir. 2013) ("Because many lawyers refrain from objecting during opening statement and closing argument,

absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct."), quoting United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir. 1993).

Nor does Petitioner demonstrate prejudice arising from the asserted failure to object. Apart from the fact that the remarks appear reasonable based on the evidence presented, and it appears unlikely that any objection would been successful, the trial court also clearly instructed and reminded the jurors immediately prior to the closing arguments that the arguments of counsel were not evidence.  (See RT 619) ("Remember that nothing the attorneys say is evidence.  In their opening statements and closing arguments the attorneys discuss the case, but their remarks are not evidence.")  The trial court also instructed the jurors that it was their responsibility to decide what happened and what the facts were based on, and only on, the evidence presented at trial.  (RT 616) ("Now, you must decide what the facts are.  It's up to you and all of you and you alone to decide what happened based only on the evidence that was received here during this trial.")  Based on the reasonableness of the remarks in question and the trial court's close in time instructions to the jury that the statements of counsel were not evidence and that the jurors alone were charged with deciding the facts based only on the evidence presented at trial, the Court finds no "reasonable probability that, but for counsel's unprofessional errors," in failing to object to the prosecutor's closing statement, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  Claim One subpart (e) is without merit and habeas relief is not warranted.  Cassett, 406 F.3d at 624.

### f.    Alleged agreement to improper jury instructions

Petitioner asserts "[i]mproper mix of cases for a jury instruction agreed to where jury was confused."  (ECF No. 1 at 8.)  Respondent contends this claim "was insufficiently specific to exhaust state remedies" and also fails on the merits.  (ECF No. 6-1 at 16.)  In the Traverse, Petitioner states: "I also will recind [sic] my objection to the improper instructions, I do believe the instructions should have been the same type of case."  (ECF No. 11 at 12.)  As discussed above, the Court found this claim to be exhausted.

As noted above, Petitioner previously raised this claim of ineffective assistance of counsel in the state habeas petition, alleging in relevant part "[t]he trial counsel permitted the merger of two theory," and "[t]he juror in error was direct [sic] to take under consideration jury instruction related to drug possession and not depriving an owner of his vehicle without consent," and "[t]rial counsel failed to object to the misinformation conveyed to the jury." (ECF No. 7-17 at 4.)  The California Supreme Court denied the habeas petition without a statement of reasoning or citation to authority. (ECF No. 7-18.) Given the lack of any stated reason for the denial of this claim, to merit habeas relief Petitioner must demonstrate there was "no reasonable basis" for the denial of his claim. See Richter, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.")

In support of this contention, Petitioner cites to Exhibit F to the Petition, which includes a portion of the trial transcript reflecting counsel and the trial court discussing a potential response to a jury question.[5]  (ECF No. 1 at 84-92, RT 699-707.)  The jury question asked for definitions of "possession" and "control" with respect to counts 2 and 4 of the charges against Petitioner. (RT 699.)  During the discussion, the trial court indicated: "I then looked to possession as it's used in drug cases since it's the same concept of possession," noting "there the court noted there are two kinds of possession - - actual possession and constructive possession," and the parties discussed and agreed to give the jurors definitions of both actual and constructive possession, as well as instructions on

_____

[5] Exhibit F also includes two trial transcript pages which reflect a defense request for jury instruction pursuant to CALCRIM 1751 as to defense of receiving stolen property, innocent intent, which the trial court denied, stating the facts did not support the proposed instruction. (See ECF No. 1 at 93-94, RT 609-10.)  Petitioner does not indicate whether or how this proposed instruction relates to the instant claim concerning the alleged merger of theories in given jury instructions causing confusion, particularly given the trial court denied this proposed instruction and it was not provided to the jury.

dominion and control.  (RT 700-709.)  Yet, a review of the record reflects the jury was never actually provided with the proposed instruction because the jurors reached a verdict before a response was finalized.  (See CT 331) ("Clerk's note: A response is not given to the jury as the Court has been notified that a verdict has been reached.")

Therefore, even were Petitioner somehow able to demonstrate that this proposed clarification to the jury was improper for using the definition of possession in another context and trial counsel rendered deficient performance in agreeing to the jury instruction, the claim fails for lack of prejudice.  First, as noted above, the record reflects the jury was not provided with the contested instruction.  (See id.)  Moreover, as Respondent reasonably points out, the jury's question specifically went to the definition of the terms control and possession as they related to counts 2 and 4, and the jury did not convict Petitioner on either of those two counts.  (ECF No. 6-1 at 12; see also RT 708-09.)  As such, Petitioner cannot show that any error resulted in prejudice.  See Strickland, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.")  Nor does Petitioner show the state court rejection of his claim was either contrary to, or an unreasonable application of, Strickland, or that it was based on an unreasonable determination of the facts.   See Richter, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.")  Claim One subpart (f) does not warrant habeas relief.

### g. **Alleged failure to object to a "commingling of cases"**

Petitioner asserts "a commingling of cases occurred with no objection."  (ECF No. 1 at 8.)  Respondent maintains the "state-court claim was insufficiently specific to exhaust state court remedies" and the instant claim fails on both the Strickland performance and prejudice prongs.  (ECF No. 6-1 at 13.)  In the Traverse, Petitioner refers to the "prejudice in the jury seeing slides on top of each other with arrows pointing at each other saying two cases one person," and faults trial counsel for failing to move to dismiss given that the trial court did not grant severance but "did admonish the counsel for the state to not commingel [sic] the cases."  (ECF No. 11 at 16.)  As noted above, the Court will exercise discretion to

adjudicate this claim notwithstanding the failure to exhaust because it clearly fails on the merits.

In support of this claim, Petitioner relies on Exhibit H to the Petition, which includes several transcript pages from the trial proceedings.  (See ECF No. 1 at 110-15.)  The first page appears to reflect the defense motion to sever counts 3 and 4 from 1 and 2 and the trial court's tentative denial of that motion, reasoning "[t]hese are both the same class of crimes," that "I don't view the evidence as necessarily weaker between the two events," and "[t]he charges are the same, so neither would inflame the jury against the defendant, and so it would appear to the court that it is proper to leave them joined."  (Id. at 111, RT 314.)  Another page reflects defense counsel's request to instruct the jurors not to consider evidence concerning counts 1 and 2 in their deliberations on counts 3 and 4, or vice versa.  (ECF No. 1 at 112, RT 603.)   Yet another page appears to reflect a portion of the prosecution's final argument to the jury, including the argument there were "[t]wo separate incidents.  Two separate dates.   Two separate times.   Two separate set of facts.   Two separate victims.  Two separate cars.  One person.  Paul Ensslin."  (ECF No. 1 at 113, RT 684.)  Finally, there appear to be two duplicate copies of a single transcript page reflecting the trial court noting "there was one slide that went up there that had the two crimes in column, and then there was a link between the two of them that said three months pointing to each other.  I didn't know if at the time whether, [Defense counsel], you just didn't want to highlight that or not, but I think at the end, obviously, [the Prosecutor] clearly said that each of these are separate," and asking if the defense wanted a jury instruction "to disregard the timing between the two" or to "let that go," to which defense counsel replied: "We can let it go, and I'll just reemphasize the 3515 instruction."  (ECF No. 1 at 114-15, RT 648.)  On one copy of the page, it appears Petitioner has added a handwritten note indicating "did not reemphasize" and "injured me with comingiling [sic] of cases."  (Id. at 114.)

It is unclear how the Court could conclude defense counsel rendered deficient performance in failing to sufficiently object to a comingling of cases when the record clearly reflects counsel moved to separate counts 1 and 2 from counts 3 and 4, a motion

the trial court denied.  (See RT 314.)  Yet, Petitioner additionally contends in the Traverse that counsel should also have moved to dismiss.  (See ECF No. 11 at 16.)  Even were Petitioner able to demonstrate deficient performance based on trial counsel's failure to move to dismiss, the claim fails for lack of prejudice.  See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.")

The trial court initially indicated it would not specifically instruct the jurors in accordance with CALCRIM 3515 to consider the counts separately and reasoned the jurors had been adequately advised of the requirement during voir dire and the court intended to issue a reminder, as follows: "There is the 3515 that tells them to consider each count separately, and you both did a considerable voir dire on that.  So I think this panel is very familiar with that.  I'm not going to read 3515.  I'll just remind that they have to consider each incident separately without considering evidence from one as to the other." (RT 603.) In response, defense counsel offered a proposed modification to CALCRIM 3515 for the court's consideration, to specifically instruct "you may not consider any of the evidence presented in regards to counts 1 and 2 in your deliberation on counts and [sic] 3 and 4.  And you may not consider any of the evidence in regard to counts 3 and 4 in your deliberation of counts 1 and 2," to which the trial court agreed, stating: "I think this way we ensure the jury is fully informed that they can't consider the two together."  (RT 603-04.)  Upon review, the trial court indeed instructed the jurors according to the proposed instruction, as follows: "Each of the counts charged in this case is a separate crime except for counts 1 and 2 which are charged as alternate offenses.  And counts 3 and 4 which are charged as alternate offenses.  You must consider each count separately and return a separate verdict for each one.  You may not consider any of the evidence presented in regards to counts 1 and 2 in your deliberations on counts 3 and 4.  And you may not consider any other

evidence presented in regards to 3 and 4 in your deliberation on counts 1 and 2." (RT 629-30.)  This Court must presume the jurors understood and followed the trial court's explicit instructions to consider the counts separately.  See Weeks, 528 U.S. at 234; Richardson, 481 U.S. at 211.  Moreover, as Respondent reasonably points out and the record reflects, Petitioner was acquitted on both counts 3 and 4.  (RT 709.)  Based on a review of the record and in particular the trial court's specific instructions to consider the counts separately as well as the acquittal on counts 3 and 4, the Court is not persuaded there is any "reasonable probability" that trial counsel's failure to move to dismiss the case in response to the trial court's denial of the motion to sever, "the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  As such, the claim is without merit and habeas relief is unavailable on Claim One subpart (g).  Cassett, 406 F.3d at 624.

### h.    Alleged failure to move to suppress illegal identification

Petitioner asserts "no motion to suppress illegal I.D. of Petitioner."  (ECF No. 1 at 8.)  Respondent maintains the claim is without merit because Petitioner fails to identify any grounds for a possible objection by trial counsel and Petitioner "offers no authority for the proposition that a witness's inability to identify a suspect in a photographic lineup is a basis for excluding in-court identification."  (ECF No. 6-1 at 13.)  As noted above, the Court will exercise discretion to adjudicate this claim notwithstanding the failure to exhaust because it clearly fails on the merits.

Petitioner cites to Exhibit L to the Petition in support of this claim, which includes several pages of testimony, the first of which reflects a law enforcement witness testifying the sales manager witness who saw an individual driving the car from the dealership and followed him could not make an identification from the six-pack photo array.  (ECF No. 1 at 147.)  A second page appears to reflect the trial testimony of the sales manager acknowledging he did not make an identification when provided with photos of "six white males with beards," but identifying Petitioner in court and explaining "Well, when I see face to face, I can tell," and agreeing that the in-court identification was his first identification of Petitioner.  (Id. at 148, RT 417.)  Petitioner also includes several other trial

transcript pages concerning the six-pack photo array and defense counsel's arguments to the jury emphasizing the significance of the witness's failure to make an identification from the photo array and casting doubt on the in-court identification.  (ECF No. 1 at 149-52.)

Petitioner does not include any declaration or other statement from trial counsel as to the reasons for failing to object to or attempt to exclude the witness's in-court identification based on the failure to previously identify Petitioner from the photo array. Upon review of the trial record, it appears plain trial counsel chose to cross-examine the witness extensively about the in-court identification and the witness's failure to previously make an identification from the photo array in an attempt to cast doubt on the credibility of the in-court identification.  The record reflects that defense counsel questioned the witness about the prior contacts with law enforcement about his viewing of the surveillance video, his description of the individual driving the car, and his failure to select an individual from the photo array.  (RT 410-17.)  The witness stated that "when I see face to face, I can tell."  (RT 417.)  Defense counsel also questioned the law enforcement witness who administered the photo array about the eyewitness's failure to make an identification.  (RT 533-37.)  In closing arguments to the jury, defense counsel also emphasized the lack of any prior photo identification, contrasted with the certainty of the in-court identification.  (See e.g. RT 668-71.)  Upon consideration, this strategy appears to fall well within the "wide range of professionally competent assistance."  Strickland, 466 U.S. at 690; see also Siripongs v. Calderon, 133 F.3d 732, 736 (9th Cir. 1998) ("[T]he relevant inquiry under Strickland is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable.")

Even to the extent Petitioner could somehow demonstrate deficient performance, this claim also clearly fails for lack of prejudice.  Stating that "reliability is the linchpin in determining the admissibility of identification testimony," the Supreme Court set out five factors to consider, including: (1) "the opportunity of the witness to view the criminal at the time of the crime," (2) "the witness' degree of attention," (3) "the accuracy of his prior description of the criminal," (4) "the level of certainty demonstrated at the confrontation,"

and (5) "the time between the crime and the confrontation," all of which is to be weighed against "the corrupting effect of the suggestive identification itself." Manson v. Braithwaite, 432 U.S. 98, 114 (1977), citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Here, the Court finds little likelihood that a motion to exclude the in-court identification would have been successful, as the balance of factors weighed in favor of admissibility. The witness had a good opportunity to view the suspect and had a high degree of attention, as the sales manager testified he first took notice of the car and he did not recognize the individual driving it, who sped away when he was spotted. (RT 383.) The witness stated he and the individual "kind of had a face-to face" at first, and thereafter, he followed the individual in his car for about twenty minutes. (RT 385-88.) At one point during the pursuit, the individual "stopped and he looked at me and he went past me." (RT 387.) All together, the witness stated he got three good looks at the driver, once during the initial notice from about a hundred feet away, the second time from about ten feet away and the third time when both vehicles were parked face to face about 200 feet apart. (RT 389-91.) The witness also provided a description of the suspect, stating the individual wore a baseball cap backwards and t-shirt, had a beard, and was little bit tall, white man in his thirties or forties. (RT 392-93.) While the witness did not make an identification from the photos, stating the individuals in the photos were all white males with beards, he identified Petitioner in court eight months after the crime. (RT 393.) The Court is also not persuaded that any corrupting effect from the identification would have outweighed the factors in favor of admissibility, as the jury was also specifically instructed on the evaluation of eyewitness testimony and could properly evaluate the credibility of the witness and the viability of the identification. (See e.g. RT 624-26.) Additionally, the other evidence against Petitioner was strong, including the surveillance video and the fact that Petitioner was found by police in the driver's seat of the vehicle, which further weighs against the possibility of prejudice from the in-court identification. Petitioner fails to demonstrate that any error by trial counsel in failing to pursue exclusion of the in-court identification due to the witness's failure to identify Petitioner from the prior photo array resulted in prejudice.

See Strickland, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.")  As such, Claim One subpart (h) is without merit and habeas relief is not warranted.  Cassett, 406 F.3d at 624.

### i.   Alleged misstatement of facts in the appellate brief

Petitioner contends "Wende misstates the facts where Court of Appeal echoes the misstate [sic]."  (ECF No. 1 at 8.)  Respondent contends the claim is unexhausted and is without merit because Petitioner fails to identify any asserted inaccuracy or how it resulted in prejudice.  (ECF No. 6-1 at 13.)  In the Traverse, Petitioner generally indicates the misstatement relates to the issues that lead up to his arrest.  (See ECF No. 11 at 16.)  As noted above, while Claim One subpart (i) is unexhausted, the Court will exercise discretion to adjudicate it because it clearly fails on the merits.

In support of this claim, Petitioner cites to Exhibit I to the Petition, which he indicates includes the appeal from the Wende brief and notes it "does not even follow the police reports at all."  (ECF No. 1 at 116.)  The exhibit appears to include several pages from the Wende brief filed in the state appellate court, but Petitioner does not identify any factual misstatements or inaccuracies in that brief.  (See id. at 117-23.)  Petitioner also includes a page from the appellate court opinion that followed the Wende brief and identifies a paragraph that he indicates "misstates the facts," which reads as follows:

> When the sales manager of a car dealership was getting into his car at about 5:15 p.m. one day, he saw a new car from his dealership approach with no salesperson inside and no temporary registration on the windshield.  When the driver saw the sales manager, the driver turned the car around and sped away.  The sales manager pursued the car and confirmed with the dealership that it had not been sold.  The car eventually stopped in a parking lot of a retail store.  When a police officer arrived at the parking lot in response to a report the car had been stolen, the officer found Ensslin sitting in the driver's seat, with two key fobs for the car attached to a clip on his belt loop, and arrested him.  The sales manager returned to the dealership and reviewed surveillance video from approximately 2:00 a.m. that day, which showed a man walking through the lot trying to open car doors and eventually driving off in the car in which Ensslin was later arrested.

(Id. at 122; see also ECF No. 7-14 at 2-3.)  Petitioner also includes a page from what appears to be a portion of a brief filed in the state superior court, including a statement of facts reflecting the date that the service manager observed the car and checked surveillance footage and the date the police contacted Petitioner in the driver's seat of the car, July 25, 2017 and July 28, 2017, respectively.  (ECF No. 1 at 125.)  Finally, Petitioner includes a page from the trial transcripts reflecting witness testimony that the surveillance video was from 2:00 a.m. on July 25.  (Id. at 126, RT 397.)  Yet again, Petitioner fails to specifically identify which portion of the factual background is inaccurate.  Upon review, while the date the car was removed from the lot or the date Petitioner was contacted by police in the car does not appear in the appellate opinion, the factual account appears to the Court an accurate recitation of the sequence of events, in that the sales manager noticed someone driving the car one evening, pursued it, and confirmed it had not been sold, later checked surveillance footage from earlier that day, and that the police thereafter arrived in a parking lot to find Petitioner in the driver's seat of that car.  In any event, Petitioner fails to articulate how any such alleged inaccuracy resulted in prejudice and in the absence of any such statement, the Court cannot find the assertedly deficient performance by appellate counsel in misstating unidentified facts in the Wende brief had any impact on the outcome of Petitioner's state appellate proceedings.  See James, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") This claim clearly fails for lack of merit and as such, habeas relief is not available on Claim One subpart (i).  Cassett, 406 F.3d at 624.

## 2.   Claim Two

In Claim Two, Petitioner contends he is serving an "illegal and excessive sentence" due to numerous errors committed by the sentencing court and also should be resentenced or have his sentence modified due to recent changes in state law concerning consideration of strikes and prison priors.  (ECF No. 1 at 7, 9.)  Respondent maintains that habeas relief is unavailable because Claim Two fails to state a cognizable federal claim and even to the extent it states a federal claim it lacks merit.  (ECF No. 6 at 2.)  Respondent maintains that

"[c]onsidered as an asserted violation of due process, the claim lacks merit because Underdahl has not shown fundamental unfairness," as Petitioner "receive [sic] the upper term, doubled for a prior 'strike,' plus three years- one for each prior prison commitment," and "[t]he court arrived at this sentence through the routine application of state-law in effect at the time." (ECF No. 6-1 at 14.) In the Traverse, Petitioner indicates another writ pertaining to one or more sentencing issues is also currently pending in state court, asserting an illegal sentence and contentions related to Cal. Penal Code sections 136 and 1016. (ECF No. 11 at 16-17.) As discussed above, the California Supreme Court's electronic docket reflects the state supreme court denied the writ in question on November 10, 2020, during the pendency of the instant federal habeas proceedings.

Specifically, Petitioner asserts multiple errors in sentencing, including that some records were "burnt" and involved a robbery without injuries yet the crime was still admitted and used during sentencing (see ECF No. 1 at 7, 57), cites numerous facts that he appears to contend should have been more heavily considered at sentencing, including that his last case prior to the instant case was in 2012, he had no new cases for 4 years and 8 months, he was on parole and he did a drug program (id. at 7), and cites several alleged errors, such as the trial court considered a spousal case during sentencing which had been dismissed outright, his lawyer told him letters were not relevant while the trial court seemed to cite a lack of letters as to Petitioner's character at sentencing, Petitioner was found guilty of one crime when two crimes were valued at three years, the trial judge found no mental impairment contrary to the record, and the record reflected the crimes lessening in severity since 1995. (Id.) Petitioner also contends a strike should have been stricken per Cal. Penal Code section 1016.8, he was not informed of future aspects of the three strike laws during sentencing as required by that same section, his prison priors should not be applicable pursuant to Cal. Penal Code section 136, and both of those sections warrant resentencing or sentence modification in his case. (Id. at 7, 9.)

To the extent Petitioner challenges the correctness of the state court's application of state law during his original sentencing proceedings or asserts that a state sentencing statute

passed after his judgment should apply to his case and requires resentencing or sentence modification, such arguments are not cognizable on federal review because they are based wholly on the interpretation and application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); see also Rhoades v. Henry, 611 F.3d 1133, 1142 (9th Cir. 2010) ("[V]iolations of state law are not cognizable on federal habeas review.")

For instance, Petitioner attaches to his Petitioner what appears to be a June 12, 2020 order from the San Diego County Superior Court indicating it "takes no action" on Petitioner's motion to modify his sentence pursuant to Cal. Penal Code § 1016.8 because the request was untimely and "does not apply to Defendant as Defendant was convicted by a jury after trial, not by a plea bargain," stating the provision voided by the statute was applicable to plea bargains.  (ECF No. 1 at 49.)  As noted above, the state appellate court dismissed Petitioner's appeal of a post judgment order denying his motion to modify his sentence under Cal. Penal Code § 1016.8, stating "[w]here, as here, the trial court did not have jurisdiction to modify the defendant's sentence, the court's order denying resentencing is not an appealable order."  (ECF No. 7-23, Lodgment No. 13) (citations omitted).  On November 10, 2020, the California Supreme Court denied the petition.  (See Case No. S263967 at https://appellatecases.courtinfo.ca.gov/search.cfm?dist=0, last visited December 15, 2020.)  Given that the state court decision was based solely on the application of state law, here, where the state court concluded that the state statute in question did not apply to Petitioner's judgment because it was the result of a jury trial rather than a plea bargain, such a matter is not cognizable on federal habeas review.

However, to the extent Petitioner additionally contends that the trial court's sentencing decision in his case violated his federal constitutional rights, such a contention is cognizable on federal habeas review.  To merit habeas relief on such a claim, Petitioner must demonstrate that the state court sentencing decision was "so arbitrary or capricious" that it "constitute[d] an independent due process . . . violation."  Richmond v. Lewis, 506

U.S. 40, 50 (1992) ("[T]he question to be decided by a federal court on petition for habeas corpus is not whether the state sentencer committed state-law error," but instead, whether the state court decision was "'so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation.'"), quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1994); <u>see also</u> <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.")  "Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds." <u>Belgarde v. State of Montana</u>, 123 F.3d 1210, 1215 (9th Cir. 1997), quoting <u>United States v. McDoughtery</u>, 920 F.2d 569, 576 (9th Cir. 1990); <u>see also</u> <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994) ("'[O]nly extreme sentences that are grossly disproportionate to the crime' violate the Eighth Amendment."), quoting <u>United States v. Bland</u>, 961 F.2d 123, 129 (9th Cir. 1992).

At the outset of sentencing hearing, defense counsel first moved to strike "almost a 20 year old conviction" from 1995 given the lack of obtainable specifics "due to the age of the offense and it being out of our jurisdiction" and noting "records were burned," while the prosecutor contended the remoteness, and nature and circumstance of the crime could all be taken into consideration without striking the strike itself and that the strike was relevant within the context of Petitioner's criminal history.  (RT 1004-08.)  The trial court noted that under state law it must consider "the rights of both the defendant and interest of society" in considering the motion, and "must consider whether in light of the nature and circumstances of the defendant's present felonies and prior serious and violent felony convictions of the particulars of the defendant's background, character and prospects, whether the defendant maybe [sic] deemed outside of that three strikes scheme."  (RT 1008-09) (citation omitted.)

After discussing the instant crime, including but not limited to the significant monetary amount involved even though the offense itself was nonviolent, Petitioner's lack of cooperation with police, and Petitioner's lack of demonstrated mental impairment "that

effects his decision making," the trial court then acknowledged there was a paucity of information on the prior crime, but: "We do know it was 23 years ago, and we consider remoteness and his conduct in the interim," noting since Petitioner's release from prison fifteen years prior he suffered thirteen additional criminal convictions. (RT 1009.) The trial court also noted "[t]he prior involved the taking by force or fear," that "[a]bout the only significant time that he is not committing crimes is when he was in jail or prison," but recognized that "all of his other crimes appear to be about the same nature involving thefts and typically are drugs," and that his history was "primarily nonviolen[t]" with a few exceptions. (RT 1009-10.) The trial court reasoned Petitioner was "subject to drug addiction," had numerous failures in completing probation or parole and appeared unlikely to change his behavior given his history and concluded: "So based upon the above the Court believes that the defendant is not outside the three strikes scheme and the motion is denied." (RT 1010-11.) On this record, it is apparent the trial court engaged in a detailed examination of Petitioner's record and the instant crime in arriving at a decision that Petitioner fell within the purview of the three strikes scheme. As such, Petitioner fails to demonstrate that it was "arbitrary or capricious" for the state court to deny the motion to strike the prior strike or that its decision was incorrect, much less fundamentally unfair. See Richmond, 506 U.S. at 50, quoting Lewis, 497 U.S. at 780; see also Christian, 41 F.3d at 469 ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.")

Nor does Petitioner demonstrate that the sentence the trial court ultimately imposed was fundamentally unfair or grossly disproportionate such that it violated Petitioner's federal constitutional rights. It instead is clear the trial court's decision was well-supported by its analysis and recitation of Petitioner's history and ample reasons for imposing the upper term and enhancements for the priors, including Petitioner's repeated recidivism. After issuing its ruling on the prior strike, the trial court gave a tentative as to sentencing, stating: "So the defendant is ineligible for probation. The Court believes the upper term of four years is appropriate and that would be double eight years under 667. And there's three

additional years for the prison priors consecutive aggregate 11 years." (RT 1011.)  Defense counsel argued strenuously against imposition of the maximum term, noting that Petitioner's three prior prison terms were two or three years each, an eleven-year term would be significantly greater than previously imposed for a similar crime, Petitioner was not violent, and probation indicated he would benefit from services.  (RT 1011-13.) Defense counsel argued: "I don't think that the court should be throwing the hammer and getting rid of the key on a case such as this," noting the case was not violent and property or monetary loss paled in comparison to physical harm to a person, but also acknowledged the trial court's tentative was within the bounds of the sentencing statute.  (RT 1015.)

The trial court then reasoned and concluded: "I would agree this is not a violent case and his history other than his strike prior is generally not violent, but the Court's responsibility in the objective of the sentencing [sic] just not to protect society from violence but from criminals and that includes protecting society from somebody who continually commits the same crimes over and over again.  It's also to prevent the defendant from committing new crimes for the period that they're incarcerated and that -- be the only thing that works with Mr. Ensslin when you look at that -- his criminal history. [¶] We would note also that it is correct that other than a strike prior all his other prison sentences have been in the range of two to three years. And we note that's never worked because he continues to commit crime over and over and over again.  Again, if we look back at his last felony conviction in 2012 as noted there's over 15 PRC's violations and there's additional six times additional custody was imposed that added another two plus years to the two years he was sentenced on and yet that had no effect. [¶] One of those releases he was to be released to a residential treatment program yet that had no effect.  And what we have, unfortunately, is somebody who decided to be a career criminal.  That is what he's done his entire adult life and it's not going to stop.  There's no indication that it's going to be stopped. [¶] So at some point the Court has to do something different than what's done in the past because what it has done in the past with the prison sentence is that were imposed have not worked."  (RT 1024-25.)

In view of the trial court's thorough evaluation of the instant crime and Petitioner's history and the stated reasons for imposing the upper term sentence and enhancements, Petitioner fails to show the sentence imposed in this case was "so arbitrary or capricious" that it "constitute[d] an independent due process . . . violation." Richmond, 506 U.S. at 50. Moreover, as the trial court clearly indicated it was imposing an upper term sentence and not one in excess of that allowable under law, which defense counsel similarly acknowledged, and in view of Petitioner's lengthy criminal history and multiple repeat offenses of the same type coupled with the stated sentencing objective to protect the public and preventing criminal behavior, the Court finds no grounds for a conclusion that the sentence imposed was "extreme" or "grossly disproportionate" to the crime committed. See Belgarde, 123 F.3d at 1215; see also Cacoperdo, 37 F.3d at 507 ("'[O]nly extreme sentences that are grossly disproportionate to the crime' violate the Eighth Amendment."), quoting Bland, 961 F.2d at 129. Upon review, Petitioner fails to show the state court rejection of his claim was either contrary to, or an unreasonable application of, clearly established federal law, nor has he shown the state court decision was based on an unreasonable factual determination. See 28 U.S.C. § 2254(d)(1)-(2); see also Richter, 562 U.S. at 97-98. Accordingly, habeas relief is unavailable on Claim Two.

## C.    Request for Appointment of Counsel

In the Traverse, Petitioner requests appointment of counsel, stating "he is ADA with no experience with the law," and "has no access to law library due to Covid 19 outbreak." (ECF No. 11 at 2.)  Petitioner has also submitted a declaration of indigency in support of his request.  (Id. at 6-7.)  The court denied without prejudice Petitioner's previous request for appointment of counsel "as it is simply not warranted by the interests of justice," noting with respect to Petitioner's assertion that he encountered problems with his filings that a review of Petitioner's petition and request to proceed in forma pauperis showed "it is clear that Petitioner is able to articulate the claims of his case."  (ECF No. 10 at 2-3.)  The Court was also previously unpersuaded that the institutional quarantine and lack of access to the law library were temporary and did not establish "exceptional circumstances" that would

warrant appointment of counsel and additionally found it was too early to determine Petitioner's likelihood of success on the merits.  (Id. at 3.)  Because it is evident Petitioner was able to articulate his habeas claims and arguments in both the Petition and in the Traverse, and because as discussed throughout the instant Order, Petitioner's claims clearly fail on the merits and do not merit habeas relief, the Court concludes the interests of justice do not warrant appointment of counsel.  (See id. at 3-4, citing LaMere v. Risley, 827 F.3d 622, 626 (9th Cir. 1987).)  Accordingly, the Court **DENIES** Petitioner's request for the appointment of counsel.

### D.   Certificate of Appealability

"A certificate of appealability should issue if 'reasonable jurists could debate whether' (1) the district court's assessment of the claim was debatable or wrong; or (2) the issue presented is 'adequate to deserve encouragement to proceed further.'"  Shoemaker v. Taylor, 730 F.3d 778, 790 (9th Cir. 2013), quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Upon review, the Court finds that a Certificate of Appealability is not warranted because the arguments presented in this habeas action neither deserve encouragement to proceed further nor has Petitioner demonstrated that jurists of reason could find the resolution of Petitioner's claims debatable or wrong.

## IV.   **CONCLUSION AND ORDER**

For the reasons discussed above, the Court **DENIES** the Petition for a Writ of Habeas Corpus, **DENIES** Petitioner's request for appointment of counsel and **DENIES** a Certificate of Appealability.

**IT IS SO ORDERED.**

Dated:  December 16, 2020

Hon. Anthony J. Battaglia
United States District Judge